## IN THE UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF OHIO
### WESTERN DIVISION

| | |
|---|---|
| SHANNON MCDANIEL, | CASE NO. 3:22-CV-02051-DAR |
| Petitioner, | JUDGE DAVID A. RUIZ |
| vs. | MAGISTRATE JUDGE DARRELL A. CLAY |
| WARDEN RYAN WALTERS,[1] | **REPORT AND RECOMMENDATION** |
| Respondent. | |

### INTRODUCTION

Through counsel, Petitioner Shannon McDaniel seeks a writ of habeas corpus. (ECF #1). Simultaneously, he moved for stay and abeyance. (ECF #2). The District Court has jurisdiction over the petition under 28 U.S.C. § 2254(a). On November 18, 2022, under Local Civil Rule 72.2, this matter was referred to me to prepare a Report and Recommendation. (Non-document entry of Nov. 18, 2022). Following briefing, on December 27, 2022, I granted the motion for stay and abeyance. (ECF #7).

On April 25, 2024, Mr. McDaniel filed a "Notice of No Unexhausted Claims." (ECF #8).I thus lifted the stay and set a schedule for further filings. (ECF #9). On July 1, 2024, the State of Ohio, on behalf of then-Respondent "Warden Toledo Correctional Institution," filed the Return

---

[1] Mr. McDaniel originally named "Warden Toledo Correctional Institution" as the Respondent here. (ECF #1). The Ohio Department of Rehabilitation and Correction's website reflects that Mr. McDaniel is housed at the Allen-Oakwood Correctional Institution, where Ryan Walters is the Warden. *See* http://drc.ohio.gov/about/facilities/allen-oakwood/allen-oakwood (last visited Jan. 23, 2025). Accordingly, under Fed. R. Civ. P. 25(d) and Rule 2(a) of the Rules Governing Section 2254 Cases in the United States District Courts (Habeas Rules), Warden Walters is automatically substituted as Respondent.

of Writ including the state court record and trial transcripts. (ECF #10, 10-1 & 11-1). Mr.

McDaniel filed a Traverse to Return of Writ on September 3, 2024. (ECF #14).

For the reasons below, I recommend the District Court **DISMISS** the petition because

both grounds it raises lack merit. I further **DENY** Mr. McDaniel's requests to conduct discovery

and hold an evidentiary hearing. Finally, I recommend the District Court **DENY** a certificate of

appealability.

PROCEDURAL HISTORY

A. **Factual findings of the Court of Appeals**

The Ohio Court of Appeals, Second Appellate District, set forth the facts here on direct

appeal. These factual findings are presumed correct unless Mr. McDaniel rebuts this presumption

by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1). The Second District determined:

> {¶2} On June 16, 2020, McDaniel, a former police officer in Greenville, Ohio, pled
> guilty to 14 counts of sexual battery involving his adopted daughter. The bill of
> information stated that nine of the offenses were committed in Darke County, Ohio,
> between November 2017 and August 2018; one of the offenses was committed in
> Franklin County in April 2018; two of the offenses were committed in Greene
> County between May and July 2018; and the last offense was committed in late July
> 2018 in Montgomery County. The plea agreement stated as follows:
>
>> * * * [T]he parties agree that because Counts 11 through 14 were
>> committed in Franklin County, Ohio, Greene County, Ohio and
>> Montgomery County, Ohio, the State of Ohio has been given
>> authority by the Prosecutor's [sic] in those jurisdiction[s] to include
>> these offenses in this Bill of Information as they occurred as a course
>> of criminal conduct and those jurisdictions will forgo prosecution of
>> the same. Moreover, the State of Ohio represents and the parties
>> agree that the investigation also included allegations of offenses
>> occurring in Hamilton County, Indiana and the State of Ohio has
>> been given authority by the Prosecutor's Office in Hamilton County,
>> Indiana that, in exchange for this plea of guilty herein, Hamilton
>> County, Indiana will also forgo prosecution of [the] same.
>
> Negotiated Plea Agreement.

2

{¶3} At sentencing on August 26, 2020, the trial court initially ordered McDaniel to complete his sex offender registration form and classified him as a Tier III offender. Thereafter, the trial court heard statements from McDaniel, McDaniel's wife, and defense counsel. The victim also made a statement regarding the abuse and the extreme emotional trauma she had suffered as a result of McDaniel's conduct. The State requested that the trial court impose consecutive prison terms.

{¶4} After hearing the statements of the parties, the trial court stated:

> * * * Mr. McDaniel, the Court has reviewed the case file and the presentence investigation in this case, takes into consideration your comments today as well as your counsel and also that of your wife.
>
> The Court has considered the purposes and the principals of sentencing under [R.C.] 2929.11 and the seriousness and recidivism factors in [R.C.] 2929.12.
>
> The Court has also taken into consideration numerous, numerous letters that the Court received from your family, friends and members of the community. The Court has also taken into consideration the letter the Court received from the victim as well as her statement today.
>
> The letter – and also your letter. The letter from you has an explanation of events in your words. In your letter, you characterize the victim as somewhat being the aggressor at times during this. On the other hand, the victim, in her letter, categorizes your conduct as rape. The Court suspects that the truth probably lies somewhere in between those two characterizations.
>
> What is not in dispute, *that you are the adopted father of this child and should have been a protector and a supporter but you were not.*
>
> What is also not in dispute, *that you engaged in sexual conduct with the victim numerous times in various locations. You have admitted by your guilty plea to at least 14 times and the evidence suggests that there were many, many times more than the 14 times.*
>
> *The Court finds most aggravating that this happened again and again and again. You could have and should never have let it happen at all. But then not only do you let it happen once, you let happen time after time.*

3

In fashioning a sentence, this Court has considered your lack of a previous record and your good standing in this community. The Court has also taken into consideration the emotional and psychological trauma to the victim that may last for years.

*You took advantage of a young girl who was a stranger in this country who had few or no one else to go to for protection and support.*

So the Court believes that a prison sentence is appropriate. And, further, the Court believes that you should serve time on each of the counts that you've admitted to. To [not] do so, would demean the conduct on those counts. But the Court also believes your lack of a record, your previous good standing in the community and the remorse you have demonstrated warrants a lesser amount on each of those counts.

So, accordingly, it is the sentence and order of this Court that you serve 12 months on each count with each count to be served consecutive for a total of 168 months or 14 years. The Court further finds that consecutive sentences are necessary to protect the public from future crime or to punish you and that consecutive sentencing is not disproportionate to the seriousness of your conduct and to the danger you pose to the public.

And the Court also finds that at least two of the multiple offenses were committed as part of one or more courses of conduct and the harm caused by two or more of the multiple offenses so committed is so great or so unusual that no single prison term for any offenses committed as part of the courses of conduct would adequately reflect the seriousness of your conduct.

(Emphasis added.) Sentencing Transcript, p. 39-42.

{¶5} As stated above, the trial court sentenced McDaniel to 12 months on each of the 14 counts of sexual battery and ordered the sentences to be served consecutively, for an aggregate sentence of 14 years in prison.

(ECF #10-1 at PageID 140-56; *see also State v. McDaniel*, No. 2020-CA-3, 2021 WL 1713306 (Ohio

Ct. App. Apr. 30, 2021) (alterations in original), *appeal not allowed*, 172 N.E.3d 170 (Ohio 2021)

(table)).

**B.**     **Trial court proceedings**

On April 3, 2020, a Special Assistant Prosecuting Attorney for Darke County, Ohio filed a Bill of Information against Mr. McDaniel alleging 14 counts of sexual battery in violation of Ohio Revised Code §§ 2907.03(A)(1) and (B).[2] (ECF #10-1 at PageID 63-70). An Amended Bill of Information was docketed on June 2, 2020, alleging 14 counts of sexual battery in violation of Revised Code §§ 2907.03(A)(5) and (B).[3] (*Id.* at PageID 70-77). Each count related to the same victim identified as "Jane Doe No. 1 . . . not his spouse, Shannon L. McDaniel being the adoptive parent of Jane Doe No. 1." (*Id.*). Counts One through Nine of the Amended Bill of Information each covered a period of about one month, starting in November 2017 and continuing through June 31, 2018, all occurring in Darke County; Count Ten allegedly occurred on or about August 1, 2018 in Darke County; Count Eleven allegedly occurred on or about April 23 to 24, 2018 in Franklin County; Count Twelve allegedly occurred on or about May 21 to 22, 2018 in Greene County; Count Thirteen allegedly occurred on or about July 20 to 21, 2018 in Greene County; and Count Fourteen allegedly occurred on or about July 30 to 31, 2018 in Montgomery County. (*Id.*).

---

[2]     Section 2907.03(A)(1) provides: "No person shall engage in *sexual conduct* with another when any of the following apply . . . The offender knowingly coerces the other person to submit by any means that would prevent resistance by a person of ordinary resolution." Ohio Rev. Code § 2907.01(A)(1) (emphasis added). The Revised Code defines "sexual conduct" as "vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex; and, without privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal opening of another. Penetration, however slight, is sufficient to complete vaginal or anal intercourse." Ohio Rev. Code § 2907.01(A).

[3]     Section 2907.03(A)(5) provides: "No person shall engage in sexual conduct with another when any of the following apply . . . The offender is the other person's natural or adoptive parent, or a stepparent, or guardian, custodian, or person in loco parentis of the other person." Ohio Rev. Code § 2907.03(A)(5).

On June 16, 2020, Mr. McDaniel waived prosecution by indictment and consented to prosecution by information. (*Id.* at PageID 78). He appeared for arraignment with retained counsel, signed a Waiver of Constitutional Rights Prior to Entering a Guilty Plea and a Negotiated Plea Agreement, and pled guilty to each charge in the Amended Bill of Information. (*Id.* at PageID 79-86, 90-92).

Mr. McDaniel appeared for sentencing on August 26, 2020. (*Id.* at PageID 93-96). The court imposed a term of 12 months of incarceration as to each count, to be served consecutively, for a total term of 14 years of incarceration. (*Id.* at PageID 94).

## C.    Direct appeal

On September 4, 2020, through the same counsel who represented him in the trial court, Mr. McDaniel appealed to the Second District. (*Id.* at PageID 97). There, Mr. McDaniel asserted a single assignment of error: "The Trial Court errored in imposing consecutive sentences." (*Id.* at PageID 105). The State responded and Mr. McDaniel replied. (*Id.* at PageID 115-39). On April 30, 2021, the Second District affirmed the trial court's judgment. (*Id.* at PageID 154; *see also McDaniel*, 2021 WL 1713306, at *7).

On June 8, 2021, Mr. McDaniel, again through the counsel who represented him in the trial court, appealed to the Supreme Court of Ohio. (ECF #10-1 at PageID 157-59). There, Mr. McDaniel advanced two propositions of law:

> First Proposition of Law: The appellate court errored in finding consecutive sentences was supported by the record.

> Second Proposition of Law: The defendant was not afforded a fair and unbiased presentence investigation report.

6

(*Id.* at PageID 161). On August 17, 2021, the Supreme Court of Ohio declined jurisdiction. (*Id.* at PageID 169; *see also State v. McDaniel*, 172 N.E.3d 170 (Ohio 2021) (table)).

### D. Motion to Withdraw Plea

On November 14, 2022, through new counsel, Mr. McDaniel filed a motion in the trial court, requesting leave to withdraw his guilty plea. (ECF #10-1 at PageID 170-93). He argued that "for a significant period of time he was unable to perform, sexually" and that "[t]his information should have been brought to the attention of the court during the plea negotiations." (*Id.* at PageID 171). He maintained that "[a]llowing a conviction to stand where it was impossible for [him] to engage in sexual conduct with the alleged victim violates due process." (*Id.*). The motion included an affidavit from Mr. McDaniel's wife, an affidavit from John Studebaker, M.D., a medical report from Dr. Studebaker, and a letter from Roger Lyss, D.C. (*Id.* at PageID 189-93). On December 30, 2022, Mr. McDaniel filed a Supplement to his Motion to Withdraw Plea. (*Id.* at PageID 194-96). He filed a second Supplement on March 8, 2023. (*Id.* at PageID 198-200). The State responded, and Mr. McDaniel replied. (*Id.* at PageID 201-09).

On April 17, 2023, the trial court denied Mr. McDaniel's motion. (*Id.* at PageID 210-18). It court found the affidavits accompanying his motion "do not suggest that the defendant was incapable of sexual relations, but merely that he may have had some health issues to address." (*Id.* at PageID 211). It characterized Mrs. McDaniel's affidavit as "in contrast to statements that she provided during the prosecution of this case" and Mr. McDaniel's affidavit as "confusing and contradictory." (*Id.* at PageID 212). It also noted that the "transcript of the plea hearing clearly demonstrates the knowing, intelligent, and voluntary entering of a guilty plea." (*Id.*). And it

referenced a letter Mr. McDaniel wrote during the presentence investigation "which admitted his guilt." (*Id.* at PageID 213). Ultimately, the court found no basis for withdrawing the plea, writing:

> The court has reviewed the record in this case, the motion of defendant and affidavits, the response of the State and the reply from the defendant.

> The defendant does not deny that he engaged in sexual relations/conduct in violation of the law with his daughter; rather, he now claims that he did not commit the act as many times as recited in the Bill of Information. He does not claim that he was improperly advised by the court at the time of his guilty plea. He was well aware at the time of his plea that the State intended to argue sentencing. He was also advised by the court of the potential sentencings including maximum sentences on each count and that the court could order the counts to be served consecutively. He was informed that he faced the possibility of up to seventy (70) years in prison.

> This court finds it troubling that this defendant could sit through the plea hearing, listen to the court's explanation of potential sentences, acknowledge that he understood the possible sentence, affirm that no promises had been made, appeal the sentence, have that sentence affirmed by the court of appeals and then seek to withdraw his guilty plea—not because he is innocent, but because of the number of counts pled to.

> This appears to be an attempt of the defendant to obtain through this motion what he could not obtain from the court of appeals—a reduction in the prison sentence imposed.

> Accordingly, this court finds the motion to withdraw guilty plea not well-taken and it is denied.

(*Id.* at PageID 217).

### E.    Subsequent appeals

On May 8, 2023, Mr. McDaniel appealed to the Second District, challenging the denial of his Motion to Withdraw Plea. (*Id.* at PageID 219-29). There, he asserted four assignments of error:

> Assignment Of Error I: The trial court erred when it failed to grant the motion to withdraw the guilty plea.

8

Assignment of Error II: The trial court erred when it failed to find counsel was ineffective pursuant to the Sixth Amendment to the federal constitution made applicable to the State of Ohio by the Fourteenth Amendment.

Assignment of Error III: The trial court convicting and imprisoning appellant for crimes he could not have committed violates the due process clause of the Fifth and Fourteenth Amendments to the federal constitution.

Assignment of Error IV: The trial court erred when it failed to hold an evidentiary hearing in this matter.

(*Id.* at PageID 233) (cleaned up). The State responded and Mr. McDaniel replied. (*Id.* at PageID 255-72).

On November 3, 2023, the Second District affirmed the trial court in all respects. (*Id.* at PageID 273-88; *see also State v. McDaniel*, No. C.A. 2023-CA-9, 2023 WL 7273536 (Ohio Ct. App. Nov. 3, 2023), *appeal not allowed*, 229 N.E.3d 120 (Ohio 2024) (table)). It determined his Motion to Withdraw was untimely and the supporting affidavits "contradictory." *McDaniel*, 2023 WL 7273536, at *4. It also concluded Mr. McDaniel "suffered no manifest injustice" because "one can commit sexual battery without engaging in vaginal intercourse." *Id.* The Second District also determined that the performance of Mr. McDaniel's trial attorney "was not ineffective and did not lead to a manifest injustice; McDaniel entered his plea knowingly and voluntarily." *Id.* at *5.

On December 14, 2023, Mr. McDaniel appealed to the Supreme Court of Ohio. (ECF #10-1 at PageID 289-90). There, he advanced two propositions of law:

Proposition of Law I: The trial court erred when it failed to find counsel was ineffective pursuant to the Sixth Amendment to the federal constitution made applicable to the State of Ohio by the Fourteenth Amendment.

Proposition of Law II: The trial court convicting and imprisoning appellant for crimes he could not have committed violated the due process clause of the Fifth and Fourteenth Amendments to the federal constitution.

(*Id.* at PageID 296, 299-300) (cleaned up). On March 5, 2024, the Supreme Court of Ohio

declined jurisdiction. (*Id.* at PageID 303; *McDaniel*, 229 N.E.3d 120 (Ohio 2024) (table)).

### FEDERAL HABEAS PETITION

In his habeas petition, Mr. McDaniel advances two grounds for relief:

Ground Number One: Petitioner was denied effective assistance of counsel as guaranteed by the Fifth and Sixth Amendments and by the tenets of *Strickland v. Washington* when his attorney failed to apprise the court of his medical condition making the criminal activity impossible.

Ground Number Two: Petitioner was denied due process when he waived his constitutional rights and entered admissions to crimes he could not have committed.

(ECF #1 at PageID 4, 6) (cleaned up). He requests the court "issue a writ of habeas corpus to have

[him] brought before the court to the end that he may be discharged from his unconstitutional

conviction"; "allow [him] to conduct discovery and expand the record relating to the issues raised

by this Petition"; "conduct a hearing at which proof may be offered concerning the allegations in

this petition that Respondent does not admit"; and "grant such other and further relief as may be

appropriate." (*Id.* at PageID 8).

### STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs Mr.

McDaniel's petition for writ of habeas corpus. *Lindh v. Murphy*, 521 U.S. 320, 336 (1997). AEDPA

recognizes that "[s]tate courts are adequate forums for the vindication of federal rights" and

therefore acts as a "formidable barrier to federal habeas relief for prisoners whose claims have been

adjudicated in state court." *Burt v. Titlow*, 571 U.S. 12, 19 (2013). It "dictates a highly deferential

standard for evaluating state-court rulings which demands that state-court decisions be given the

benefit of the doubt." *Bell v. Cone*, 543 U.S. 447, 455 (2005) (citation and quotation omitted).

Accordingly, an application for habeas corpus cannot be granted for a person in custody pursuant to a state conviction unless the adjudication "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the State court proceedings." 28 U.S.C. § 2254(d).

Habeas courts review the last explained state-court judgment on the federal claim at issue. *Ylst v. Nunnemaker*, 501 U.S. 797, 805 (1991). For purposes of § 2254(d)(1), clearly established federal law "is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003). It includes "the holdings, as opposed to dicta, of [Supreme Court] decisions." *Williams v. Taylor*, 529 U.S. 362, 412 (2000). The state-court decision need not refer to relevant Supreme Court cases or even establish awareness of them; it is sufficient that the result and reasoning adhere to Supreme Court precedent. *Early v. Packer,* 537 U.S. 3, 8 (2002) (per curiam).

A state-court decision is contrary to Supreme Court precedent if the state court arrives at a conclusion opposite that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has decided on a set of materially indistinguishable facts. *Williams*, 529 U.S. at 405; *White v. Mitchell*, 431 F.3d 517, 523 (6th Cir. 2005). The word "contrary" means "diametrically different, opposite in character or nature, or mutually opposed." *Williams*, 529 U.S. at 405. A state court does not act contrary to clearly established law when the precedent of the Supreme Court is ambiguous or nonexistent. *See, e.g., Mitchell v. Esparza*, 540 U.S. 12, 17 (2003) (per curiam).

A state-court decision involves an unreasonable application of the Supreme Court's precedent if the state court identifies the correct governing legal rule from the Supreme Court's cases but unreasonably applies it to the facts of the state prisoner's case, or if the state court either unreasonably extends a legal principle from the Supreme Court's precedent to a new context where it should not be applied or unreasonably refuses to extend that principle in a new context where it should apply. *Williams*, 529 U.S. at 407. The appropriate measure of whether a state-court decision unreasonably applied clearly established federal law is whether that state adjudication was "objectively unreasonable" and not merely erroneous or incorrect. *Id*. at 409-11; *see also Machacek v. Hofbauer*, 213 F.3d 947, 953 (6th Cir. 2000). "It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington v. Richter*, 562 U.S. 86, 102 (2011).

Under § 2254(d)(2), a state court's factual determinations stand unless they are objectively unreasonable given the evidence presented in state court. *Id*. at 100. The Supreme Court has repeatedly emphasized "a state court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion." *Burt*, 571 U.S. at 18.

Under federal law, "a determination of a factual issue made by a State court shall be presumed to be correct. [Petitioner] shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2554(e)(1). Comity principles also require federal courts to defer to a state's judgment on issues of state substantive and procedural law. *Murray v. Carrier*, 477 U.S. 478, 491 (1986); *Engle v. Isaac*, 456 U.S. 107, 128-129 (1982). Federal courts must accept a state court's interpretation of its statutes and rules of practice. *Duffel v. Dutton*, 785 F.2d 131, 133 (6th Cir. 1986).

12

The standard is intended to be difficult to meet and reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal. *Harrington*, 562 U.S. at 102-03; *see also Brown v. Davenport*, 596 U.S. 118, 133 (2022) (describing habeas as an "extraordinary remedy, reserved for only extreme malfunctions in the state criminal justice system and different in kind from providing relief on direct appeal") (cleaned up). To obtain "habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Harrington*, 562 U.S. at 103.

The District Court will not have jurisdiction over a petitioner's habeas claims unless they "challenge the legality of his custody" based on a "violation of the Constitution or law or treaties of the United States." 28 U.S.C. § 2254(a). Indeed, "[t]he writ of habeas corpus is not available to remedy errors of only state law." *Smith v. Morgan*, 371 F.App'x 575, 582 (6th Cir. 2010) (citing 28 U.S.C. § 2254(a)); *see also Norris v. Schotten*, 146 F.3d 314, 328 (6th Cir. 1998) ("A claim based solely on an error of state law is not redressable through the federal habeas process."). Moreover, merely asserting that a state law error violates the Federal Constitution is not enough to justify jurisdiction. *See Wilson v. Corcoran*, 562 U.S. 1, 5 (2010); *see also Rivera v. Illinois*, 556 U.S. 148, 158 (2009) ("The Due Process Clause . . . safeguards not the meticulous observance of state procedural prescriptions, but the fundamental elements of fairness in a criminal trial.") (internal quotation omitted); *see also Engle*, 456 U.S. at 121 n.21 ("We have long recognized that a 'mere error of state law' is not a denial of due process.") (internal citation omitted).

13

That said, habeas relief may be available if an alleged error of state law subjected the petitioner to a "fundamentally unfair" criminal process. *Williams v. Anderson*, 460 F.3d 789, 816 (6th Cir. 2006). "[T]he category of infractions that violate fundamental fairness is defined very narrowly," and includes only state rulings that "offend some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Bey v. Bagley*, 500 F.3d 514, 521 (6th Cir. 2007) (cleaned up). "A state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus." *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) (citing *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991)); *see also Allen v. Morris*, 845 F.2d 610, 614 (6th Cir. 1988) (stating that a federal habeas court does not function as another state appellate court reviewing state courts' decisions on state law or procedure). The habeas petitioner bears the burden of showing "the principle of procedure violated by the rule (and allegedly required by due process)" is fundamental. *Bey*, 500 F.3d at 521.

D<span style="font-variant:small-caps">ISCUSSION AND</span> A<span style="font-variant:small-caps">NALYSIS</span>

## I.    Ground One should be denied because it lacks merit.

In Ground One, Mr. McDaniel argues he received ineffective assistance of trial counsel because counsel "failed to apprise the court of [Mr. McDaniel's] medical condition making the criminal activity impossible." (ECF #1 at PageID 4). This argument hinges on Mr. McDaniel's purported erectile dysfunction that he says made him "unable to have sexual conduct with [the victim] from spring until October 2018." (*Id.* at PageID 5). He adds that because his trial counsel did not investigate these facts, Mr. McDaniel "entered a plea to crimes that he could not possibly commit." (*Id.*). "This failure to investigate as well as provide a defense to the sexual battery falls below an objective standard." (*Id.*).

14

The State counters that Mr. McDaniel "opted with eyes wide open to enter an extremely favorable negotiated guilty plea to reduced charges" and so "he has waived any argument of his counsel's so-called pre-plea 'failures to investigate' his potential trial defense." (ECF #10 at PageID 42). "Alternatively, the appellate court's reasonable rejection of his assertions of ineffective trial counsel is entitled to AEDPA deference" under §§ 2254(d) and (e). (*Id.* at PageID 42). Thus, the State maintains that Ground One should be dismissed as meritless. (*Id.* at PageID 54).

The Sixth and Fourteenth Amendments guarantee criminal defendants the right to "reasonably effective assistance" of counsel. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To establish constitutionally ineffective representation, a habeas petitioner must show that counsel's performance fell below an objective standard of reasonableness based on all the circumstances in the case, such that the attorney did not function as "counsel" guaranteed by the Sixth Amendment, and counsel's deficient performance prejudiced the defense. *Id.* at 687-88. This is a highly deferential standard, and the petitioner must overcome the presumption that counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690.

To succeed on his habeas claim, Mr. McDaniel must first establish his guilty plea was not entered voluntarily and intelligently. In *Tollett v. Henderson*, 411 U.S. 258, 267 (1973), the Supreme Court reaffirmed the principle recognized in *Brady v. United States*, 397 U.S. 742 (1970), *McMann v. Richardson*, 397 U.S. 759 (1970), and *Parker v. North Carolina*, 397 U.S. 790 (1970) that

> a guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent

character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in *McMann*.

Consequently, a knowing and voluntary guilty plea waives all non-jurisdictional defects in the proceedings, including a claim of ineffective assistance of counsel that does not relate to the voluntariness of the plea. *See United States v. Stiger,* 20 F.App'x 307, 308-09 (6th Cir. 2001).

The test for determining the validity of a guilty plea is "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford,* 400 U.S. 25, 31 (1970); *see also Boykin v. Alabama,* 395 U.S. 238, 242 (1969). A voluntary and intelligent plea is one in which the defendant is aware of the "relevant circumstances and likely consequences" of his plea. *Boykin,* 395 U.S. at 242; *Brady,* 397 U.S. at 748; *McAdoo v. Elo,* 365 F.3d 487, 494 (6th Cir. 2004). The voluntariness of the plea "can be determined only by considering all the relevant circumstances surrounding it." *Brady,* 397 U.S. at 749. Where, as here, a defendant is represented by counsel during the plea process and enters his plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice "was within the range of competence demanded of attorneys in criminal cases." *McMann,* 397 U.S. at 771.

The State generally satisfies its burden of showing a plea was intelligent and voluntary by producing a transcript of the state-court proceedings. *McAdoo,* 365 F.3d at 494. A state court finding that a guilty plea was made voluntarily is presumed correct. *Garcia v. Johnson,* 991 F.2d 324, 326 (6th Cir. 1993). The petitioner must overcome a heavy burden to overturn a state court's findings. *Id.* at 327. "Solemn declarations in open court" made by a defendant during a plea hearing "carry a strong presumption of verity." *Blackledge v. Allison,* 431 U.S. 63, 74 (1977).

16

In addition to demonstrating his guilty plea was not voluntary and intelligent, Mr. McDaniel must also show that his attorney's advice to enter that plea was constitutionally deficient. The Supreme Court has determined the two-part test for evaluating claims of ineffective assistance of counsel announced in *Strickland v. Washington*, 466 U.S. 668 (1984), applies to challenges to a guilty plea based on ineffective assistance of counsel. *See Hill v. Lockhart*, 474 U.S. 52, 58 (1985). Accordingly, "[w]hen a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness," *Strickland*, 466 U.S at 687-88, and to satisfy the prejudice requirement, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59. A voluntarily and intelligently entered guilty plea will not be vacated simply because the defendant was not advised of every conceivable constitutional plea in abatement he might have to the charge, or by a showing that if counsel had pursued a certain factual inquiry such a pursuit would have uncovered a possible constitutional infirmity in the proceedings. *Tollett*, 411 U.S. at 267.

In *Hill*, the Supreme Court stated:

[W]here the alleged error of counsel is a failure to investigate or discover potentially exculpatory evidence, the determination whether the error "prejudiced" the defendant by causing him to plead guilty rather than go to trial will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea.

474 U.S. at 59.

Mr. McDaniel does not establish either his guilty plea was involuntary, unintelligent, or unknowing or his attorney's performance was constitutionally deficient. The trial court reviewed

the materials submitted in support of the Motion to Withdraw, found some of the information to be contradictory, and concluded the change-of-plea-hearing transcript "clearly demonstrates the knowing, intelligent, and voluntary entering of a guilty plea." (ECF #10-1 at PageID 212). On appeal, the Second District agreed with the trial court's analysis, finding that the performance of Mr. McDaniel's trial counsel "was not ineffective and did not lead to a manifest injustice" because Mr. McDaniel "entered his plea knowingly and voluntarily." *McDaniel*, 2023 WL 7273536, at *5.

A presumption of correctness applies to those findings. *Garcia*, 991 F.2d at 326. Having reviewed the record, I find that the trial court's and the Second District's analysis of this claim is based on a reasonable determination of the facts in light of the evidence introduced in the state courts and is a reasonable interpretation of precedent set forth in *Strickland* and *Hill*. *See* 28 U.S.C. § 2254(d). Mr. McDaniel has not shown otherwise and has not rebutted the presumption of correctness applied to the state-court's factual findings by clear and convincing evidence. *See id.* § 2254(e)(1).

Mr. McDaniel has also not sufficiently alleged or shown the requisite deficient performance under *Strickland* or prejudice under *Hill*—that evidence of his claimed impotency during "spring to October 2018" would have caused his counsel to change the recommendation to plead guilty or that had his counsel allegedly not failed to investigate this issue (which was obviously known to Mr. McDaniel at the time), Mr. McDaniel would have rejected the plea bargain and gone to trial. Indeed, as the Second District noted, a conviction for sexual battery can be based on conduct other than vaginal intercourse, including fellatio, cunnilingus, and inserting any bodily part of object into the victim's vagina or anus, making his claimed erectile dysfunction non-dispositive of his ability to engage in other forms of prohibited sexual conduct. *See* Ohio Rev.

Code § 2907.01(A). Indeed, when the trial court asked Mr. McDaniel to provide "a brief explanation for what exactly did you do," Mr. McDaniel did not specify he had *intercourse* with the victim. Rather, he responded that he had "*[s]exual conduct* with my adopted daughter," which embodies sexual activities other than intercourse. (ECF #11-1 at PageID 330-31) (emphasis added). During her victim statement to the trial court at sentencing, the victim specifically described an occasion when Mr. McDaniel "made me give him an [*sic*] oral sex . . . ." (*Id.* at PageID 370).

Additionally, the Amended Bill of Information charged offenses occurring as early as November 1, 2017, well before the claimed onset of Mr. McDaniel's alleged period of impotency. Finally, as the courts below noted, the plea agreement here also allowed Mr. McDaniel to obtain a resolution of potential criminal charges in other jurisdictions in Ohio and Indiana. Presumably, his trial counsel did not fail to overlook this substantial benefit to Mr. McDaniel by making a recommendation to enter the proposed plea agreement with the State.

To the extent Mr. McDaniel asserts a state-law claim that the trial court abused its discretion in denying his motion to withdraw his guilty plea, I recommend the District Court **DISMISS** that claim as not cognizable. In all other respects, because Mr. McDaniel has not shown the trial court violated his due process rights or that alleged deficiencies in counsel's investigation of the case prejudiced him, I recommend the District Court **DENY** Ground One as meritless.

## II.      Ground Two should also be denied because it lacks any merit.

In Ground Two, Mr. McDaniel alleges he was denied due process "when he waived his constitutional rights and entered admissions to crimes he could not have committed." (ECF #1 at PageID 6). He again asserts that when he pled guilty, "he was entering admissions to crimes that he could not have possibly committed due to a medical condition." (*Id.*). He also alleges he "could not

have raised any of these claims in the state court as his trial counsel was also his appellate counsel." (*Id.*).

For the reasons described above, a review of the record discloses that even if Mr. McDaniel was impotent during *part* of the period covered by the Bill of Information, he was not impotent during the *entire* period. And even if he were unable to have sexual intercourse, he could have engaged in other forms of prohibited sexual conduct with the victim, including by causing her to perform oral sex on him, as she specifically described during the sentencing hearing. (ECF #11-1 at PageID 370). As a result, his claim that he admitted to crimes he could not have committed and thereby was deprived of due process does not withstand scrutiny.

Ultimately, as the State correctly notes (ECF #10 at PageID 56), claims relating to the deprivation of constitutional rights before a guilty plea are foreclosed by that plea. *See United States v. Broce*, 488 U.S. 563, 569 (1989). All that remains is the inquiry, described above, into whether the plea was made voluntarily, intelligently, and knowingly. There is nothing here to suggest otherwise, as both the trial court and the Second District concluded.

For these reasons, I recommend the District Court **DENY** Ground Two as meritless.

## III. Mr. McDaniel's additional requests for discovery and an evidentiary hearing are unwarranted; therefore, I deny them.

### A. Request to conduct discovery

In his petition, Mr. McDaniel requests an opportunity to conduct discovery. (ECF #1 at PageID 1, 8). He does not provide any details about the specific discovery he wishes to conduct or why he is entitled to do so. He does not address this issue in his Traverse. (*See* ECF #14).

"Unlike the usual civil litigant," a federal habeas petitioner "is not entitled to discovery as a matter of ordinary course." *Bracy v. Gramley*, 520 U.S. 899, 904 (1997). Discovery in federal habeas

20

cases is governed by Habeas Rule 6. That rule allows a petitioner to conduct discovery otherwise available under the Federal Rules of Civil Procedure "if, and to the extent that, the judge in the exercise of his discretion and for good cause shown grants leave to do so, but not otherwise." Habeas Rule 6(a). "Good cause" exists only if "'specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief . . . .'" *Bracy*, 520 U.S. at 908-09 (quoting *Harris v. Nelson*, 394 U.S. 286, 300 (1969)).

The habeas petitioner must demonstrate the materiality of the information requested. *See Williams v. Bagley*, 380 F.3d 932, 974 (6th Cir. 2004). Habeas Rule 6 does not "sanction fishing expeditions based on a petitioner's conclusory allegations," but requires "specific allegations of fact." *Id.* (cleaned up). If a habeas petitioner "offers nothing more than vague musings" regarding how the requested discovery might proceed, a district court may correctly determine the petitioner has not met the "good cause" standard. *Stojetz v. Ishee*, 892 F.3d 175, 207 (6th Cir. 2018). Additionally, discovery on a habeas claim that is procedurally defaulted, and for which the petitioner has not shown cause or prejudice to overcome that bar, would be futile and so does not meet the "good cause" standard. *See Williams*, 380 F.3d at 974-76.

Moreover, under AEDPA, "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011); *accord Jones v. Shoop*, No. 5:19-CV-2063, 2024 WL 238045, at *3 (N.D. Ohio Jan. 23, 2024).

Under *Pinholster*, a habeas court cannot consider the contents of outside discovery in determining if the decision of the state court was an "unreasonable application of [ ] clearly established federal law," so long as the state court ruling was made on the merits. 28 U.S.C. § 2254(d)(1). However, that is not the case here. The state court

21

failed to make a ruling on the merits . . . . Even if [the petitioner] had raised the particulars of [his] claim, the court of appeals would have found that he was barred from doing so based on his failure to properly raise it in the court below. As such, the state court's failure to adjudicate it on the merits does not fall under the *Pinholster* exception. [Petitioner] cannot now expand the record with this evidence.

*Skatzes v. Warden, Mansfield Corr. Inst.*, No. 3:09-cv-289, 2017 WL 2374434, at *12 (S.D. Ohio June 1, 2017) (first substitution in original).

Here too, to the extent Mr. McDaniel seeks to expand the record concerning claims the state court resolved on the merits (such as his ineffective assistance of trial counsel claim), clearly established Supreme Court precedent limits this court to the record before the state court that adjudicated the claim. Accordingly, there is no need for him to conduct discovery before this court may resolve his habeas claims.

For these reasons, I **DENY** Mr. McDaniel's request to conduct discovery.

## B. Request to hold an evidentiary hearing

The petition also includes a request for an evidentiary hearing. (ECF #1 at PageID 1, 8). Again, Mr. McDaniel provides no argument in support of this request, either in the petition or in the Traverse. (*See* ECF #1, 14).

Given the essential need to promote the finality of state convictions, *Calderon v. Thompson*, 523 U.S. 538, 556 (1998), an evidentiary hearing may be held only when the petition "alleges sufficient grounds for release, relevant facts are in dispute, and the state courts did not hold a full and fair evidentiary hearing." *Sawyer v. Hofbauer*, 299 F.3d 605, 610 (6th Cir. 2002). An evidentiary hearing may be warranted when it could enable a petitioner to prove the petition's factual allegations that, if true, would entitle the petitioner to federal habeas relief. *Schriro v. Landrigan*, 550 U.S. 465, 474-75 (2007). If the record refutes the petitioner's factual allegations or otherwise

precludes habeas relief, a district court need not hold an evidentiary hearing. *Id.* at 474. Having resolved Mr. McDaniel's claims on the existing record, I find an evidentiary hearing is unnecessary. I therefore **DENY** his request for a hearing.

### CERTIFICATE OF APPEALABILITY

A habeas petitioner may not appeal the denial of an application for a writ of habeas corpus unless a judge issues a certificate of appealability (COA) and specifies the issues that can be raised on appeal. 28 U.S.C. § 2253(c). "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a district court has determined a petitioner's constitutional claim to lack merit, the petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong" before receiving a COA. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). When the district court denies a habeas petition on procedural grounds without reaching the petitioner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *Id.* A showing that the appeal would succeed on the claim is not required to grant a COA. *Miller-El v. Cockrell*, 537 U.S. 322, 337 (2003).

Mr. McDaniel has not made a substantial showing that he was denied any constitutional right. Jurists of reason would not find it debatable whether the grounds for relief are valid claims of the denial of constitutional rights. Similarly, no procedural ruling appears to be in error. Therefore, I recommend the District Court **DENY** Mr. McDaniel a COA as to both grounds of his petition.

CONCLUSION AND RECOMMENDATION

For all these reasons, I recommend the District Court **DISMISS** the petition because both grounds raised lack merit. I further **DENY** his requests to conduct discovery and hold an evidentiary hearing. Finally, I recommend the District Court **DENY** a certificate of appealability.

Dated: January 28, 2025

DARRELL A. CLAY
UNITED STATES MAGISTRATE JUDGE

## Objections, Review, and Appeal

Within 14 days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to the proposed findings and recommendations of the Magistrate Judge. *See* Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1); Local Civ. R. 72.3(b). Properly asserted objections shall be reviewed de novo by the assigned district judge.

Failure to file objections within the specified time may result in the forfeiture or waiver of the right to raise the issue on appeal, either to the district judge or in a subsequent appeal to the United States Court of Appeals, depending on how or whether the party responds to the Report and Recommendation. *Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019). Objections must be specific and not merely indicate a general objection to the entirety of the Report and Recommendation; "a general objection has the same effect as would a failure to object." *Howard v. Sec'y of Health and Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991). Objections should focus on specific concerns and not merely restate the arguments in briefs submitted to the Magistrate Judge. "A reexamination of the exact same argument that was presented to the Magistrate Judge without specific objections 'wastes judicial resources rather than saving them and runs contrary to the purpose of the Magistrates Act.'" *Overholt v. Green*, No. 1:17-CV-00186, 2018 WL 3018175, at *2 (W.D. Ky. June 15, 2018) (quoting *Howard*, 932 F.2d at 509). The failure to assert specific objections may in rare cases be excused in the interest of justice. *See United States v. Wandahsega*, 924 F.3d 868, 878-79 (6th Cir. 2019).